## BULLOCK ELECTRIC MFG. CO. v. GENERAL ELECTRIC CO.

(Circuit Court of Appeals, Third Circuit, May 5. 1908.)

No. 13.

PATENTS—INVENTION—ARMATURES.

The Morrow patent, No. 504,401, for an armature for dynamo electric machines, claim 2, which covers an armature core comprising layers of segmental laminæ dovetailed to an internal supporting shell, in which the segments in consecutive layers break joints, in view of the prior art, which discloses segmental laminæ which break joints, and also in the Parshall patent, No. 493,337, the same dovetail connection, except that the laminæ are annular and not segmental, is merely an aggregation of old elements, which do not coact nor perform any new function, and is void for lack of patentable invention.

Appeal from the Circuit Court of the United States for the District of New Jersey.

For opinion of the court below, see 155 Fed. 740.

Thomas Francis Sheridan and C. V. Edwards, for appellant.

W. K. Richardson, for appellee.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

GRAY, Circuit Judge.   This is an appeal from so much of an interlocutory decree entered by the Circuit Court of the United States for the District of New Jersey as adjudges claim 2 of the letters patent No. 504,401, issued September 5, 1893, to the complainant, as assignee of John T. Morrow, to be valid and infringed by apparatus made by the defendant.

The hearing in the Circuit Court involved the consideration of two patents, one of which was the above Morrow patent, and the other was patent No. 559,910, of May 12, 1896, to Reist.   The Circuit Court or-

dered that the bill be dismissed, as to the patent to Reist, and from that portion of the decree no appeal has been taken. The defendant has appealed from so much of the decree as relates to the Morrow patent, and this appeal, therefore, involves the consideration of that patent.

The defenses set up in the court below by the defendant, were the usual ones, of invalidity of the patent in suit, by reason of anticipation and want of patentable invention, and noninfringement. The assignments of error to the findings of the court in respect to the Morrow patent, involve the issues raised by these defenses.

As stated in appellant's brief, the patent in suit, although entitled "armature for dynamo electric machines," in reality concerns only a mechanical detail, and does not relate to the electrical or magnetic part of the machine, nor does it affect in any way the electrical or magnetic operation of the machine.

Armatures of dynamo machines are built up of thin annular plates of iron, of the same dimensions, supported side by side by a solid or spider-like construction, occupying the inner space of the rings and revolving on an axis passing through the centers of said rings. These ring-shaped laminæ in small machines are continuous. In building larger machines, it is more convenient to make the rings in segments, and the joints between the segments of the adjacent rings are staggered so as to overlap, thus securing greater mechanical strength and solidarity to the aggregate structure. Perhaps a better mental picture of the structure of such armatures may be conveyed at the outset to one unfamiliar with the art, by likening them to the ordinary thin iron washers strung upon a supporting rod or cylinder to any required depth —such washers as are in common use to tighten wheels upon axles, etc.

In the specifications of his patent, Morrow thus describes his claimed improvement in the structure of armatures, in connection with the drawings which we here insert:

"My invention relates to the construction of armatures its object being to provide efficient and economical means for building up a laminated core and securing it to its support or carrier. In carrying out my invention I provide an internal cylindrical supporting shell, preferably carried by the usual armature spiders keyed to a shaft, and on the outer surface of said supporting shell longitudinal grooves are cut, into which corresponding projections on the inner surface of an annular armature core are adapted to fit, preferably making a dovetail or undercut joint. The core itself is composed of segmental laminæ of such proportions that a predetermined number of them make one layer of the core; and in adjacent layers the segments are so arranged as to break joints. The said segments are provided at their inner edges with projections adapted to fit the grooves on the supporting shell, and registering with each other when the core is assembled. In the accompanying drawings, Fig. 1 is an end elevation of an armature constructed in accordance with my invention, and Figs. 2, 3 and 4 are modifications in the shape of the grooves and projections whereby the parts are united. Referring to Fig. 1, the cylindrical supporting shell A is carried on spiders A¹ keyed to a shaft A² in the ordinary manner. At regular intervals along the outer surface of said supporting shell A are longitudinal undercut grooves $a$, into which fit the dovetail projections $b$, on the laminæ B. In making up an armature, the spiders and supporting shell are first assembled, and the laminæ of sheet iron punched out in the shape indicated in Fig. 1 are slipped over the surface of the said shell with the projections $a$ in the grooves $b$. After one layer is in place, another, breaking joints with the first, is put on, and so on, until the armature is com-

pleted. The dotted lines in Fig. 1 indicate the edges of the laminæ in successive layers, showing the manner of breaking joints."

FIG-1-

FIG-2-

FIG-3-

FIG-4-

There are three claims, the first and third of which set forth the alleged invention as described in the specifications, but the second, to which the charge of infringement and the controversy as to validity have been confined in the argument, claims broadly an armature core of segmental laminæ in consecutive layers, dovetailed in any manner to an internal supporting shell. The claims read as follows:

"1. An armature for dynamo electric machines, comprising a cylindrical supporting shell having longitudinal undercut grooves in its outer surface, and an annular core made up of segmental laminæ fitting thereon and pro-

vided with internal dovetail projections integral therewith and engaged by said undercut grooves, as described.

"2. An armature core comprising layers of segmental laminæ dovetailed to an internal supporting shell, in which the segments in consecutive layers break joints, substantially as described.

"3. An armature comprising an internal cylindrical support, undercut grooves on the surface thereof, and a core fitting and surrounding said support, and built up of laminæ punched with internal registering projections engaged and gripped by said grooves, but not fitted exactly thereto, as described."

Only a brief consideration of some of the prior patents displayed in the record, is necessary to show that if the invention claimed in the patent in suit is to be supported, it must be confined within the narrow limits assigned to it by claims 1 and 3, as an improvement in an already well developed art. We think, however, that the history of the prior art does more than this, and seriously challenges patentable novelty of the invention as claimed.

As said by the learned judge of the court below, Morrow was not the first to use segmental laminæ in building up armature cores. In proof of this, he cites the British patent of July 6th, issued to Gibbs & Fesquet, the Geisenhoner patent of November 12, 1889, the British patent, of October 18, 1890, to Hopkinson, the British patent of February 7, 1891, to Kapp, the Lundell patent, of October 20, 1891, and the Smith patent, of February 21, 1893. It is not necessary to discuss these patents at length, as it is admitted that they all describe segmental laminæ, so assembled as to break joints. In none of them, however, are there any dovetailed connections between the spider and the armature. In most of them, the segmental laminæ, as stated by the court below, are fastened to the frame of the armature by bolts running transversely through the laminæ and parallel with the shaft or spider of the armature.

In the United States Crompton patent, of 1888, there is specified an armature consisting of an iron ring core, formed preferably of a large number of separate rings or washers, stamped out of soft annealed sheet iron. These washers are mounted on longitudinal spokes, or radial bars, from the central hub. In carrying this out, the patentee says:

"I stamp or otherwise cut out dovetailed shaped notches in the inner edge of each of the washers. These notches all being cut by the same stamping press, must be exactly alike. The radial bars have corresponding dovetailed projections cut at their outward ends or edges (as the case may be)."

The structure is then further described in the specifications, so as to show that these dovetailed ends of the spider arms, supporting the core by engaging with corresponding dovetailed grooves in the inner circumference of the core, serve not only to support the core, but hold it firmly in place, thus doing away with the necessity for bolts running transversely through the plates of the core and the current wasting passages thereby created. The testimony, however, shows that this objection, arising from wasted electrical energy, has been largely obviated or made negligible by the placing of the bolts near the inner edge of the annular core, and out of the direct path of the electrical currents. The device of the Kapp patent, above cited, exhibits a nota-

ble instance of an innocuous bolt fastening. This patent shows rings of segmental laminæ, precisely like those of the patent in suit, the several layers of which break joints. On the inner side of these laminæ are projecting lugs, through which the bolts pass, quite as much outside the body of the core as the dovetailed projections of the patent in suit, and as little liable to present a convenient path for the electrical current. As said by counsel for the appellant:

"The difference between the Kapp construction and the Morrow construction, in short, is, that Morrow threads the dovetailed projections of his plates into the grooves on the spider, whereas Kapp threads his segmental plates upon bolts carried by the spider."

In both constructions, the individual laminæ are held, in the one case by the dovetailed projection, and in the other case by the bolts. We append illustrative drawings of this bolt construction, from the British patents to Gibbs & Fesquet and to Kapp:

Fig. 8.

Fig. 3.

But we come a step nearer to the device of the patent in suit, if it be not altogether anticipated in the prior patent to Parshall, of March 14, 1893. It is best introduced by quoting from the specifications of the patent in suit, where the patentee says:

"I am aware of patent No. 493,337, granted to Horace F. Parshall, March 14, 1893, and therefore do not claim broadly an annular core supported by and dovetailed to an internal cylindrical support, but confine myself to a core made up of segmental laminæ punched with internal dovetail projections. It

is obviously of material advantage to make the laminæ segmental rather than annular, since the material from which they are punched can in this way be cut much less to waste while by so assembling consecutive layers as to break joints, as above set forth, a practically solid structure is obtained. A further improvement consists in the modifications in the shape of the dovetail connections, as described, which render the parts much more readily assembled. By making the core with internal dovetail projections integral therewith, a greater depth of free iron for the transverse of magnetism is obtained."

Turning to the Parshall patent, we find disclosed in the specifications and drawings an armature spider and a cylindrical supporting shell, substantially the same as that of the Morrow patent; also an armature core made up of thin plates or laminæ. The only differences between the two structures are, that Parshall's laminæ are annular, whereas Morrow's rings are divided into segments, but the continuous annular plate of Parshall, and the segmental annular plate of Morrow are alike fastened to the internal cylindrical supporting shell by dovetailed connections. Figures 1 and 3 of the Parshall patent are here inserted:

Fig. 1.

Fig. 3.

Pausing here, it seems obvious that, when once a dovetailed connection between the laminæ and the internal shell is suggested, the particular form of the dovetail is immaterial, so far as invention goes. No method of union between contacting parts of a structure is more common or more efficient under certain circumstances, than a dovetail. It is one of the oldest of mechanical devices, which, though it may be practiced in various forms, is governed by the same mechanical principle. If a dovetailed connection between the parts of a structure is once suggested, the method or precise form of applying the dovetail principle is a matter that would occur to any skilled mechanic, and be varied according to the requirements of convenience or economy. It is here not at all irrelevant to note that the Dodge patent for a band saw pulley, set out in the record, discloses, as applied to a pulley, an almost identical construction with that of the Morrow patent.

It is true, that the device belongs to another art. But the patent is interesting, as exhibiting the application of the dovetail method of connection, under conditions that are mechanically similar to those of the device of the patent in suit. The pulley in this patent consists of a central spider or shell, around which is placed an annular core, composed of wooden segmental laminæ, laid side by side, the required thickness, and glued together, the segments in the successive layers breaking joints. The inner surfaces of the segmental laminæ are dovetailed to the internal supporting shell. The particular method of dovetailing is not that described in the patent in suit, as the dovetailed projections are upon the internal supporting shell, and engage with the corresponding dovetailed grooves in the inner surface of the laminæ. In this respect, the form or method of the dovetail is that of the defendant's armature, as hereinafter described. If we concede that, being of a different art, this is not strictly an anticipation, it nevertheless serves to illustrate the want of novelty in the application of the dovetail principle, to a situation almost precisely similar in the patent in suit.

Having seen just how the dovetail principle, so well known in the mechanical arts, was worked out in the patent in suit, let us turn to see how it was worked out or applied in the prior Parshall patent. A dovetailed key or rib is fixed firmly in the supporting shell, by being inserted in a dovetailed aperture therein. (See Fig. 1 of the Parshall patent.) The other side of the key or rib is correspondingly dovetailed, and projects out of the aperture and above the surface of the supporting shell. The spider and its shell are stood on end, and the annular laminæ, in the inner edge of which are stamped dovetailed apertures, to register and engage with the projecting dovetails of the keys, or ribs, as just described, are slipped on said keys, together with their insulation, until a sufficient number has been piled up to meet the requirements of the particular armature. It appears, therefore, that the assembly of the annular laminæ is made in precisely the same manner as that of the segmental laminæ of the patent in suit. It goes without saying, that the essential construction of the armature is the same, whether the annular laminæ of the Parshall patent be retained or cut into two or more segments. In both cases, they are threaded in precisely the same manner on the supporting shell and dovetailed ribs.

In Fig. 3 of the Parshall patent, is illustrated a modified form of dovetailed joint. This dovetailed projection, C, on the spider, b, is solid and integral with the supporting shell, and projects into and registers with the dovetailed groove on the interior side of the armature core. Claim 2 of the Parshall patent covers a dovetailed projection, integral with either the core or the shell, thus completely meeting the special requirements of the patent in suit in that respect. The patent in suit requires, as we have seen, that the dovetailed projections shall be on the interior of the annular laminæ, and so stamped as to engage and register with corresponding dovetailed apertures in the supporting shell. When once a dovetailed connection has been suggested or resorted to, it would seem immaterial whether the reciprocal dovetailed projections and apertures be on one or the other of the parts to be united. Indeed, as was pointed out by complainant's expert, the dovetailed projections and apertures may be so arranged that they alternate with each other, two dovetailed projections enclosing a dovetailed aperture, so made that the appearance of projections and apertures in the opposing sides are precisely alike.

It has been also insisted by complainant's counsel, in their brief, and by complainant's expert witness, that the defendant's device, though the dovetailed projection was from the supporting spider, and not from the interior circumference of the laminæ, still unlawfully appropriates that part of the claimed invention. The learned judge of the court below also adopts this view, for he says:

"Nor do I think there is any material difference between the two constructions, in that, in the Morrow construction, the projections are on the laminæ, while in the defendant's construction, the grooves are on the laminæ."

We are also of this opinion, and therefore must conclude that the dovetailed connection between the spider and the laminæ, described in the patent in suit, does not materially differ in mechanical effect from the dovetailed connection between the same parts described in the Parshall patent. It is the dovetail principle that is resorted to in both, for the purpose of holding together the armature core and the interior shell.

The device of the patent in suit is plainly an aggregation of old elements, and does not present the essential features of a patentable combination. No new function is achieved by the old elements, either singly or in combination, and no co-action of these elements is shown, whereby a new and desirable result has been obtained. The device is undoubtedly an improvement upon what went before, but this, in our opinion, has not been the product of patentable invention. Indeed, the only purpose disclosed by the patentee himself in his specifications, is to provide an efficient and economical means for building up a laminated core. He says:

"It is obviously of material advantage to make the laminæ segmental, rather than annular, since the material from which they are punched can in this way be cut much less to waste."

Much was said, in argument, though nothing in the patent itself, about the desirable function which attached to the dovetail connection between the spider and laminæ, of holding the laminæ in place against

the centrifugal force, as well as against driving force. But this function was dormant in the dovetail arrangement of the Parshall patent, as long as the laminæ were in annular form, but would at once be brought into operation by dividing the laminæ of that patent into segments. Surely invention cannot be claimed in the appropriation of an old device, by reason of the unthought of and undisclosed function in question.

The views we have here indicated lead irresistibly to the conclusion that the second claim of the patent in suit cannot be sustained as valid, in view of the prior art. But it seems to be admitted that claims 1 and 3, which make dovetailed projections in the laminæ an essential part of the invention, are not infringed by the defendant's structure, which resembles more nearly in its dovetail feature the device of the Parshall patent than it does the device of the patent in suit, the projections in defendant's structure being unquestionably upon the spider, and not upon the interior of the laminæ. The two claims referred to respond to the disclaimer of the specifications of the patent, which we have already quoted. The patentee has, all through his specifications, spoken of internal dovetailed projections, and in the part quoted, he has chosen to confine himself to a "core made up of segmental laminæ punched with internal dovetailed projections," and has coupled this with a disclaimer of any broader claim. In the view we take of this part of the specifications, it is not necessary to discuss the ingenious argument of counsel for complainant, as to how far the claims can control the specifications, or the specifications control the claims. We content ourselves with saying that, in view of the prior art and the specific recognition of that art in the specifications, as quoted, the broad second claim of the patent in suit cannot be sustained.

It is therefore ordered that so much of the decree of the court below as refers to the Morrow patent, No. 504,401, be reversed, and a decree be entered in conformity with this opinion.